**CITY FIRE EQUIPMENT CO., INC., Plaintiff,**

v.

**ANSUL FIRE PROTECTION WORMALD U.S., INC., Defendant.**

**CITY FIRE EQUIPMENT CO., INC., Plaintiff,**

v.

**AMEREX CORPORATION, Defendant.**

**Bankruptcy Nos. CV89–Y–1728–S, CV89–Y–1727–S.**

United States District Court, N.D. Alabama, S.D.

Dec. 7, 1989.

Robert H. Adams, Najjar Denaburg Meyerson Zarzaur Max Wright & Schwartz, Birmingham, Ala., for plaintiff.

Kendall W. Maddox, Dominick Fletcher Yeilding Wood & Lloyd, Birmingham, Ala., for defendant Amerex Corp.

Gilbert E. Johnston, Jr. & Michael L. Hall, Johnston Barton Proctor Swedlaw & Naff, Birmingham, Ala., for defendant Ansul Fire Protection Wormald U.S., Inc.

## MEMORANDUM OPINION

PROPST, District Judge.

The court has under consideration the issue of whether its reference to the Bankruptcy Court should be withdrawn with regard to these two cases.[1] The Bankruptcy Judge has recommended withdrawal based upon *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Neither defendant has filed a claim

1. The issue being of concern to the whole court, it will be addressed by all judges of the District Court for the Northern District of Alabama, *en banc,* except Judge Hancock who has recused himself.

2. The court assumes that the lack of "jurisdiction" referred to is a suggestion that this court, which has jurisdiction, cannot refer the actions to the Bankruptcy Court.

3. The closest indication that this issue is being addressed is when the Court states "[w]e must decide whether Congress may assign and has

in the bankruptcy case and the matters are pending before the Bankruptcy Court pursuant to actions to avoid or recover preferences. There is a jury demand in each action. The Bankruptcy Court has stated that "This bankruptcy court does not have jurisdiction of these preference actions."[2] This court does not agree.

This court has carefully read the *Granfinanciera* case. Nowhere does that case hold that the Bankruptcy Court does not have jurisdiction of these actions. The sole holding of *Granfinanciera* is that the defendants there, who had not filed a claim, were entitled to a jury *trial.* It left unanswered the question of whether a Bankruptcy Judge can conduct such a *trial.* It does not decide the issue of whether the Bankruptcy Court has "jurisdiction" of such actions for other purposes.[3] It certainly does not hold that references of such actions must be withdrawn immediately upon jury demand. The Court merely repeatedly refers to the right to a jury *trial.*[4] The Court emphasized this when it stated, "The question presented is whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury *trial* when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." (Emphasis added). *Id.,* 109 S.Ct. at 2787.

The Court made the following additional pertinent comments.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Amendments), Pub.L. 98–353, 98 Stat. 333, however, designated fraudulent conveyance actions "core proceedings," 28 U.S.C. § 157(b)(2)(H) (1982 ed., Supp. IV), which

assigned *resolution* of the relevant claim to a non-Article III adjudicative body that *does not use a jury as a factfinder.*" (Emphasis added) *Id.,* 109 S.Ct. at 2790. If the Bankruptcy Court did not have "jurisdiction," the "unanswered question" of whether a Bankruptcy Court can conduct jury *trials* would be moot.

4. While the actions here are preference actions rather than styled as fraudulent transfer actions as addressed in *Granfinanciera,* the parties, in an oral discussion, have acknowledged that the defendants are entitled to a jury *trial. Granfinanciera* itself so suggests.

bankruptcy judges may adjudicate and in which they may issue final judgments, § 157(b)(1), if a district court has referred the matter to them. § 157(a). We are not obliged to decide today whether bankruptcy courts may conduct jury trials in fraudulent conveyance suits brought by a trustee against a person who has not entered a claim against the estate, either in the rare procedural posture of this case, see *supra,* at 2789, n. 3, or under the current statutory scheme. See 28 U.S.C. § 1411 (1982 ed., Supp. IV). Nor need we decide whether, if Congress has authorized bankruptcy courts to hold jury trials in such actions, that authorization comports with Article III when non-Article III judges preside over them subject to review in or withdrawal by the district courts. We also need not consider whether jury trials conducted by a bankruptcy court would satisfy the Seventh Amendment's command that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law," given that district courts may presently set aside clearly erroneous factual findings by bankruptcy courts. Bkrtcy. Rule 8013. The sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them.

*Id.,* 109 S.Ct. at 2794–2795.

For if a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2), is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power." *Crowell v. Benson, supra,* 285 U.S. [22], at 51, 52 S.Ct. [285], at 292 [76 L.Ed. 598 (1932)]. And if the action must be tried under the auspices of an Article III court, then the Seventh Amendment affords the parties a right to a jury trial

whenever the cause of action is legal in nature.

*Id.,* 109 S.Ct. at 2796.

In *Atlas Roofing* [*Co., Inc. v. Occupational Safety and Health Review Commission* ], 430 U.S., at 442, 450, n. 7, 97 S.Ct., at 1261, 1266, n. 7 [51 L.Ed.2d 464 (1977) ], we stated that "[i]n cases which do involve only 'private rights,' this Court has accepted factfinding by an administrative agency, without intervention by a jury, only as an adjunct to an Art. III court, analogizing the agency to a jury or a special master and permitting it in admiralty cases to perform the function of the special master." That statement, however, must be read in context. First, we referred explicitly only to Congress' power, where disputes concern private rights, to provide administrative factfinding instead of jury trials in *admiralty* cases. Civil causes of action in admiralty, however, are not suits at common law for Seventh Amendment purposes, and thus no constitutional right to a jury trial attaches. *Waring v. Clarke,* 5 How. 441, 460, 12 L.Ed. 226 (1847). Second, our statement should not be taken to mean that Congress may assign at least the initial factfinding in all cases involving controversies entirely between private parties to administrative agencies or other tribunals not involving juries, so long as they are established as adjuncts to Article III courts. If that were so, Congress could render the Seventh Amendment a nullity. Rather, that statement, citing *Crowell v. Benson,* 285 U.S., at 51–65, 52 S.Ct. at 292–298, means only that in *some* cases involving "private rights" *as that term was defined in Crowell and used in Atlas Roofing*—namely, as encompassing all disputes to which the Federal Government is not a party in its sovereign capacity— may Congress dispense with juries as factfinders through its choice of adjudicative forum. Those cases in which Congress may decline to provide jury trials are ones involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency

or specialized court of equity. Whatever terminological distinctions *Atlas Roofing* may have suggested, we now refer to those rights as "public" rather than "private."

*Id.*, 109 S.Ct. at 2797, n. 10.

Our decision in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), under the Seventh Amendment rather than Article III, confirms this analysis. Petitioner, an officer of a bankrupt corporation, made payments from corporate funds within four months of bankruptcy on corporate notes on which he was an accommodation maker. When petitioner later filed claims against the bankruptcy estate, the trustee counterclaimed, arguing that the payments petitioner made constituted voidable preferences because they reduced his potential personal liability on the notes. We held that the bankruptcy court had jurisdiction to order petitioner to surrender the preferences and that it could rule on the trustee's claim without according petitioner a jury trial. Our holding did not depend, however, on the fact that "[bankruptcy] courts are essentially courts of equity" because "they characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering." *Id.* at 327, 86 S.Ct., at 471. Notwithstanding the fact that bankruptcy courts "characteristically" supervised summary proceedings, they were statutorily invested with jurisdiction at law as well, and could also oversee plenary proceedings. See *Atlas Roofing*, 430 U.S., at 454, n. 11, 97 S.Ct., at 1268, n. 11 (*Katchen* rested "on the ground that a bankruptcy court, *exercising its summary jurisdiction*, was a specialized court of equity") (emphasis added); *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) (*"[F]or many purposes* 'courts of bankruptcy are essentially courts of equity'") (emphasis added). Our decision turned, rather, on the bankruptcy court's having "actual or constructive possession" of the bankruptcy estate, 382 U.S., at 327, 86 S.Ct., at 471, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate. *Id.* at 329–331, 86 S.Ct., at 472–474. Citing *Schoenthal v. Irving Trust Co., supra* [287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)], approvingly, we expressly stated that, if petitioner had not submitted a claim to the bankruptcy court, the trustee could have recovered the preference only by a plenary action, and that petitioner would have been entitled to a jury trial if the trustee had brought a plenary action in federal court. See 382 U.S., at 327–328, 86 S.Ct., at 471–472.

*Id.*, 109 S.Ct. at 2798.

The 1978 Act abolished the statutory distinction between plenary and summary bankruptcy proceedings, on which the Court relied in *Schoenthal* and *Katchen.* Although the 1978 Act preserved parties' rights to jury trials as they existed prior to the day it took effect, 28 U.S.C. § 1480(a) (repealed), in the 1984 Amendments Congress drew a new distinction between "core" and "non-core" proceedings and classified fraudulent conveyance actions as core proceedings triable by bankruptcy judges.

*Id.*, 109 S.Ct. at 2800.

We do not decide today whether the current jury trial provision—28 U.S.C. § 1411 (1982 ed. Supp. IV) permits bankruptcy courts to conduct jury trials in fraudulent conveyance actions like the one respondent initiated. Nor do we express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments. We leave those issues for future decisions. We do hold, however, that whatever the answers to these questions, the Seventh Amendment entitles petitioners to the jury trial they requested.

*Id.*, 109 S.Ct. at 2802.

■ This court has not attempted to quote or emphasize all references in the case to a jury *trial.* The repeated emphasis is, however, on the right to a jury *trial*

and on *findings* of fact. It is clear that Bankruptcy Courts have "jurisdiction" of such actions if they are in the form of counterclaims, or if no jury is demanded even if there is no counterclaim.[5] This court concludes that the mere filing of a jury demand does not cause the Bankruptcy Court to lose "jurisdiction" of the action(s) or mandate that the reference be withdrawn. 28 U.S.C. § 157 allows Bankruptcy Judges to hear all core proceedings which are referred to it. Under that section, core proceedings include "proceedings to determine, avoid, or recover preferences." *Granfinanciera* did not determine that § 157 is invalid, only that certain claims entitle parties to jury *trials*. The authority otherwise granted to Bankruptcy Judges to hear and determine such cases short of *jury trial adjudication* has not been affected.

Another issue is what "jurisdiction" does the Bankruptcy Court have to conduct jury *trials*. This court will not decide that issue at this stage, but will await an authoritative appellate decision. In the interim, this court will conduct jury *trials*.

■ The remaining questions are whether the Bankruptcy Court can supervise discovery, conduct pre-trial conferences, rule on dispositive motions, etc. In short, can the Bankruptcy Court conduct all proceedings short of the jury selection and trial? This court concludes that the Bankruptcy Court is uniquely qualified and has authority, even in actions such as this in which a jury trial has been demanded, to supervise discovery and conduct pre-trial conferences and rule on motions. While motions to dismiss and motions for summary judgment may be dispositive, they do not impact on the right to a *jury* trial. They merely involve legal issues as to whether *any* trial is necessary. Such motions impact on the right to a *trial* of any type, jury or non-jury. They do not result in the findings of fact, only a determination that findings of fact are unnecessary because of failure to state a claim upon which relief can be granted, lack of disputed facts, etc. The granting of such motions does not deprive a party of a *right* to a *jury* trial.

*In re Wedtech Corporation*, 94 B.R. 293 (S.D.N.Y.1988), the Court considered whether to withdraw a reference to the bankruptcy court after a jury had been demanded. The court concluded that the defendants were entitled to a jury trial in a *non-core related* proceeding, but stated:

The defendants' right to a jury trial would not be disturbed by allowing Judge Buschman to continue to oversee the pretrial supervision of this case, until such time as the case is ready for trial or dispositive motions. Judge Buschman's expressed familiarity with the present action, as well as the factual overlap with the numerous cases before him, present a unique and compelling opportunity to promote judicial economy and swift resolution, to the benefit of both of the parties. This Court will therefore not exercise its discretion to withdraw the reference completely. The reference will not extend, however, beyond the point where the matter is ready for trial or dispositive motions, if that eventuality should occur. *Cf.*, 28 U.S.C. § 636.

Defendant cites cases where the presence of a valid jury demand has prompted the district court to withdraw the reference in its entirety. *E.G., Interconnect Telephone Services, Inc.* [*v. Farren*], 59 B.R. 397 (S.D.N.Y.1986). As indicated above, the discretionary inquiry by the Court here involves a case by case assessment of the factors affecting withdrawal, particularly judicial economy and orderly proceedings in the bankruptcy court. In *Interconnect*, for example, the reference was withdrawn to avoid two separate, complete jury trials. *Id.* at 400. Clearly, such a scenario would strongly militate withdrawal. In the present case, however, two trials will *not* occur. Again, the Court specifically finds that judicial economy will be furthered by allowing the reference to stand during the pendency of pre-trial proceedings.

*Id.*, 94 B.R. at 297.

While *Wedtech* suggests withdrawal "where the matter is ready for trial *or*

---

**5.** At least *Granfinanciera* does not hold to the    contrary.

**650**

*dispositive motions,"* this court sees no reason not to allow bankruptcy judges to exercise their special knowledge in the area and make decisions with reference to dispositive motions.

█ The issue of when the reference should. be withdrawn may sometimes be one of logistics and administration, rather than one of law or purely judicial determination. Because of the special knowledge of these matters which the Bankruptcy Judges have, the court concludes that the references should not be generally withdrawn until the cases are ready for jury trial. After discovery is complete, all motions have been ruled upon and pretrial orders filed, the Bankruptcy Court should recommend withdrawal of the references and this court will schedule the cases for jury trial. Further implementation of this holding can be addressed by local rules by the judges of this court in consultation with the Bankruptcy Judges.

/s/ Sam C. Pointer, Jr.
UNITED STATES DISTRICT JUDGE

/s/ E.B. Haltom, Jr.
UNITED STATES DISTRICT JUDGE

/s/ Robert B. Propst
UNITED STATES DISTRICT JUDGE

/s/ U.W. Clemon
UNITED STATES DISTRICT JUDGE

/s/ William M. Acker, Jr.
UNITED STATES DISTRICT JUDGE

/s/ Seybourn H. Lynne
SENIOR UNITED STATES DISTRICT JUDGE

/s/ Clarence W. Allgood
SENIOR UNITED STATES DISTRICT JUDGE

/s/ J. Foy Guin, Jr.
SENIOR UNITED STATES DISTRICT JUDGE