**In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

**Commercial Financial Services, Inc., Plaintiff,**

**v.**

**Gertrude A. Brady, Defendant.**

**Bankruptcy Nos. 98–05162–R, 98–05166–R.**

**Adversary No. 99–0038–R.**

United States Bankruptcy Court, N.D. Oklahoma.

May 21, 1999.

Larry M. Wolfson, Jay S. Geller, Jerry L. Switzer, Jr., Jenner & Block, Chicago, IL, Neal Tomlins, Ronald E. Goins, Tomlins & Goins, Tulsa, OK, for plaintiff.

R. Thomas Seymour, C. Robert Burton, F. Randolph Lynn, R. Thomas Seymour and Associates, Tulsa, OK, for defendant.

## RECOMMENDATION REGARDING DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

DANA L. RASURE, Chief Judge.

### Procedural History

On December 11, 1998, Plaintiff Commercial Financial Services, Inc. ("CFS") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *See* Adversary Docket # 1 (Doc. 1). On February 11, 1999, CFS filed its Complaint against Defendant Gertrude A. Brady ("Brady"), and on March 12, 1999, CFS filed its First Amended Complaint (the "First Amended Complaint"). The First Amended Complaint seeks recovery from Brady on the following claims for relief: (1) fraud upon CFS by misrepresenting

facts in order to effect a transfer of property of the estate (computer equipment) and upon CFS and the Bank of Oklahoma, N.A. (the "Bank") in misrepresenting that she was entitled to draw on a letter of credit; (2) breach of fiduciary duty as a corporate executive by misrepresenting facts in order to effect a transfer of property of the estate (computer equipment) and in misrepresenting that she was entitled to draw on the letter of credit; (3) conversion of property of the estate (computer equipment) and improperly obtaining $500,000 on a letter of credit which resulted in a claim by the Bank against the estate in the amount of $500,000; (4) a claim under 11 U.S.C. § 549 for unauthorized post-petition transfers of computer equipment and causing a lien to be fixed against property of the estate, the recovery of which may be obtained under 11 U.S.C. § 550; (5) violation of the automatic stay by causing the unauthorized release of equipment to Jay Jones, a former officer and director of CFS, and by causing a lien to be fixed upon property of the estate; (6) breach of Brady's management retention agreement by engaging in behavior inappropriate to her position, pursuant to one or more of the sub-sections defining cause for termination in the agreement; and (7) breach of warranty under 12A O.S. § 5–110 (Oklahoma Commercial Code). Further, CFS requests that Brady's claims against the estate be disallowed under 11 U.S.C. § 502(d). *See* First Amended Complaint, Doc. 8.

On March 11, 1999, Brady filed a Motion to Withdraw the Reference and Brief, Jury Trial Demand, and Objection to Bankruptcy Court's Entry of Judgment in this Case ("Motion to Withdraw"). Doc. 4. Also on March 11, 1999, Brady filed the Application of Gertrude A. Brady to Stay Her Obligation to Respond to the Complaint Until Her Motion to Withdraw the Reference Has Been Decided. Doc. 5.

On March 12, 1999, in addition to filing the First Amended Complaint, CFS filed an Emergency Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief ("Motion for TRO") and a Memorandum of Law in support of the Motion for TRO. Doc. 6, 7. In its Motion for TRO, CFS sought to enjoin the disposition of the proceeds of the $500,000 letter of credit.

A hearing on the Motion for TRO was set for March 17, 1999. On March 16, 1999, Brady filed an Application ... for Continuance of Hearing on the Emergency Motion of CFS for TRO, Preliminary Injunction and Other Relief ("Application for Continuance"), to which CFS filed an objection. Also on March 16, 1999, Brady filed an Emergency Motion and Brief to Stay All Proceedings in this Case Until the Motion to Withdraw the Reference Has Been Ruled On And/or to Transfer All Proceedings to the District Court ("Motion to Stay"). Doc. 11, 12, 13.

On March 17, 1999, the hearing on the Motion for TRO was held, at which CFS appeared through its president, Fred C. Caruso, its general counsel, Caroline Benediktson, and its counsel, Jay Geller and Jerry Switzer. Brady did not appear personally but appeared through her counsel, R. Thomas Seymour by telephone, and through counsel Robert Burton and Randall Lynn in person. At the hearing, as a preliminary matter, the Court issued a bench ruling denying the Application for Continuance and the Motion to Stay. *See* Transcript of Proceedings of March 17, 1999, Doc. 27. Following the submission of evidence and arguments of counsel, the Court took the Motion for TRO under advisement until later in the day. At or about 5:00 p.m. on March 17, 1999, the Court issued a telephonic ruling granting the TRO and setting a hearing on the request for preliminary injunction for Monday, March 29, 1999. *Id.* at 103–14.

At the hearing, the Court inquired about the current location of the proceeds of the letter of credit. Brady was not in attendance and her counsel stated that he did not know where the funds were. Late in the day on March 17, 1999, Brady filed an

Advice of Supplemental Filing and Request That Order Not Be Entered Until Supplemental Filing Made by Defendant, wherein Brady's counsel represented that he would .reveal the location of the proceeds in a supplemental filing. Doc. 14.

On March 18, 1999, Brady filed a Supplemental . Filing on the "Status of the Money" in which she objected to the entry of the TRO and sought vacation of the TRO; she did not, however, provide any information on the "status of the money." Doc. 16.

On March 22, 1999, Brady filed an Emergency Motion . . . to Dissolve Temporary Restraining Order ("Motion to Dissolve") and a brief in support thereof. Doc. 22.

On March 23, 1999, Brady filed her Answer . . . to the First Amended Complaint ("Answer"). Doc. 24.

On March 23, 1999, CFS obtained an order from this Court requiring Brady to respond to CFS's discovery regarding the location of the proceeds of the letter of credit and disclosure of her current employment, assets and other financial information by 4:30 p.m. on Friday, March 26, 1999. Doc. 25, 30.

On March 24, 1999, CFS filed its Emergency Motion . . . to Continue Preliminary Injunction Hearing And to Extend Temporary Restraining Order, Or, Alternatively, to Authorize Fred C. Caruso to Appear Via Telephone at Hearing. Brady objected to a continuance, but consented to telephone participation. The Court entered an Order authorizing CFS's president, Fred C. Caruso, to appear and testify by telephone on March 29, 1999. Doc. 26, 28, 29.

On March 26, 1999, CFS responded to Brady's Motion to Withdraw the Reference. Doc. 31. Also on March 26, 1999, the Court entered its Order Denying Defendant's Motion to Dissolve Temporary Restraining Order, and clarified the factual and legal basis upon which the TRO was entered. Doc. 32. Later in the day, Bra-

dy filed an Application . . . to File Affidavit Ex Parte Underseal [sic], in which Brady stated that she would reveal the location of the proceeds of the letter of credit. Doc. 33.

On March 29, 1999, the morning of the hearing on CFS's request for preliminary injunction, CFS filed an Emergency Motion in Limine, Objection to Application to File Ex Parte Affidavit, and Request To Expand Scope of Injunctive Relief. Doc. 34. In its Emergency Motion, CFS argued that it. did not obtain responsive answers to its discovery seeking information about Brady's financial condition and therefore the Court should take as established, and prevent Brady from contesting, certain elements necessary to support a preliminary injunction, i.e., that CFS would suffer irreparable harm if an injunction was not entered and that Brady would suffer no harm if an injunction was entered. In addition, CFS sought to expand the scope of the injunctive relief to freeze all of Brady's assets and income (less funds required for Brady's ordinary living expenses) pending the resolution of the case.

A hearing was held on March 29, 1999. Brady's Affidavit was tendered to the Court, whereupon the Court considered it and with Brady's consent made its contents of public record. The Affidavit disclosed that Brady had already disposed of all of the proceeds of the letter of credit by paying taxing authorities, making a substantial down payment and paying closing costs on a residence in Boca Raton, Florida, and in relocating to Florida. Thereafter, the Court entertained argument in support of CFS's Motion in Limine and Request to Expand Scope of Injunctive Relief. CFS offered its evidence in support of both motions as well as for the request for preliminary injunction and rested. Brady was to present her evidence after the lunch recess. After the lunch recess, Brady's counsel announced that Brady consented to the entry of an expanded preliminary injunction as re-

quested in CFS's Request to Expand Scope of Injunctive Relief. A Continued and Expanded Temporary Restraining Order was entered through April 1, 1999, whereupon a hearing on the expanded request for preliminary injunction was to be heard unless a consensual preliminary injunction was entered prior thereto. Doc. 36.

On April 1, 1999, a Consensual Preliminary Injunction was entered. Doc. 39.

On April 5, 1999, Brady filed a Reply Brief on Motion to Withdraw the Reference and Objection to Bankruptcy Court's Entry of Judgment. Doc. 40.

On April 15, 1999, CFS filed a Motion to Allow Setoff and/or Satisfaction of Secured Claim [1] seeking authority to liquidate certificates of deposit that secured Brady's letter of credit (and those securing letters of three other former executive employees who presented their letters to the Bank) in order to satisfy the indebtedness to the Bank that arose on account of the presentation of the letter of credit. CFS so moved in order to eliminate diminution to the estate caused by interest accrual on the indebtedness at 8.50% per annum. The spread between interest earned on the certificates of deposit and the interest accrued on the debt was approximately 4.0%. On May 18, 1999, the motion was granted. Thus, the estate has been diminished in an amount in excess of $500,000 on account of Brady's exercise of the letter of credit.

The Motion to Withdraw the Reference is now ripe for consideration by this Court for the purpose of making this report and recommendation to the District Court. See Rule B–6 of District Court Miscellaneous Order No. M–128 dated April 11, 1985.

### Recommended Findings of Fact

The Court recommends that the District Court adopt the procedural history set forth above and further make the following findings of fact which are supported by the record. Brady was an executive employee of CFS earning in excess of $500,000 per year. Less than one month prior to the bankruptcy, Brady and other management insiders entered into Management Retention Agreements ("MRAs") in which these managers agreed to continue performing management duties for CFS in exchange for certain benefits to which they would be entitled in the event of a change of control, a diminution of compensation, or other events that could impact the terms and conditions of their employment. In connection with the MRAs, CFS caused the Bank to issue, pre-petition, letters of credit in favor of Brady and other managers—in Brady's case in the amount of $500,000—which were exercisable under certain conditions, but not in the event of termination for cause or voluntary termination. The letters of credit were secured by assets of CFS, now property of the estate, namely certificates of deposit.

On or about January 8, 1999, approximately four weeks after commencement of the bankruptcy case, Brady alleges that she was "constructively terminated." CFS, however, alleges that on January 11, 1999, CFS terminated Brady for cause in connection with the completion of its investigation into Brady's post-petition release of certain computer equipment to former CFS officer and director, Jay Jones, which CFS alleges was contrary to a direct order of its president, Fred C. Caruso. By letter dated January 12, 1999, CFS advised Brady that she had been terminated for cause and was not entitled to draw on the letter of credit referred to above. Brady represented to the Bank, by virtue of a signed "Certification" dated January 8, 1999 and a "Beneficiary's Signed Statement" dated January 12, 1999, that she was entitled to exercise the letter of credit in the amount of $500,000. On or about January 13, 1999, the Bank honored the letter of credit and transferred $500,000 to Brady and her designees (i.e., certain tax deposit accounts). CFS's obligation to pay the Bank was secured by certificates of

1. Docket # 637, In re Commercial Financial Services, Inc., Case No. 98–05162–R.

deposit, which are property of the estate. Brady's draw on the letter of credit caused a lien in the amount of $500,000 to vest upon one or more certificates of deposit owned by the estate.

At some point after January 8, 1999, Brady moved to Florida. With the proceeds of the letter of credit, she purchased a residence in Boca Raton jointly with Jeffrey O'Hare, another former CFS executive who drew on his letter of credit in the same amount.

**Recommended Conclusions of Law**

Bankruptcy court jurisdiction is set forth in 28 U.S.C. § 157. Bankruptcy court jurisdiction exists only to the extent that power is conferred upon, or "referred to," the bankruptcy court by the district court. *See* 28 U.S.C. § 157(a). The District Court has referred to the bankruptcy courts in this district all bankruptcy cases and proceedings to the full extent permitted by Section 157(a). *See* In the Matter of Rules of Court, Miscellaneous No. M–128, specifically the orders dated July 10, 1984 ("Order of Referral of Bankruptcy Cases") and April 11, 1985 ("District Court Rules for Bankruptcy Practice and Procedure," such rules hereinafter cited as "Rule B ____"). Further, the District Court has designated to the bankruptcy courts in this district the power to conduct jury trials to the extent permitted by 28 U.S.C. § 157(e). *See* In the Matter of Rules of Court, Miscellaneous No. M–128 dated June 21, 1995 ("Order Amending District Court Rule for Bankruptcy Practice and Procedure B–14 'Jury Trials' ").

Motions for withdrawal of reference are governed by 28 U.S.C. § 157(d) ("Section 157(d)"), Rule B–6 of the District Court Rules, and Rule 5011 of the Federal Rules of Bankruptcy Procedure. Section 157(d) provides—

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so

withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The second sentence of Section 157(d)—the mandatory withdrawal provision—does not apply in this proceeding because neither CFS's claims nor Brady's defenses implicate federal laws other than title 11 of the United States Code. Therefore, it is within the discretion of the District Court whether to withdraw the reference if Brady shows "cause" for withdrawal.

Rule B–6 provides in relevant part—

> A particular proceeding commenced in ... the Bankruptcy Court shall be transferred to the District Court for hearing and trial by a District Judge only in accordance with the procedure below:
>
> (1) A party seeking such transfer shall file a motion therefor in the Bankruptcy Court certifying one or more of the following grounds:
>
> \* \* \*
>
> (F) Cause exists, within the contemplation of 28 U.S.C. § 157(d), for the withdrawal of the particular proceeding to this District Court (a specification of such alleged cause must be stated).
>
> \* \* \*
>
> (6) The motion for transfer, together with a written recommendation of a Bankruptcy Judge, shall be transmitted by the Clerk of the Bankruptcy Court to the Clerk of the District Court. The latter shall assign the motion to a District Judge who shall rule *ex parte* or upon such notice as the District Judge shall direct. The ruling shall be filed in the Bankruptcy Court as an order of the District Judge.

(7) In instances where such ruling is not dispositive of the particular proceeding transferred, the proceeding shall go forward to hearing, trial and judgment as the District Judge's order shall direct.

The grounds set forth in Rule B–6(1)(A) through (E) (which are omitted) are not applicable to CFS's claims or Brady's defenses. Under these local rules, Brady's burden is to show "cause" within the contemplation of 28 U.S.C. § 157(d).

■ "Cause" is a case-specific term. Generally, in determining whether the alleged "cause" is sufficient to warrant withdrawing the reference of the matter to the bankruptcy court, district courts should consider factors such as "judicial economy, convenience, and the particular court's knowledge of the facts," promoting uniformity and efficiency of bankruptcy administration, reducing forum shopping, and conserving debtor and creditor resources, as well as whether parties are entitled to a jury trial, and whether the claims involved are "core" bankruptcy proceedings. *In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D.Ill. 1992). *See also Trustees of the UMWA Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)*, 221 B.R. 512 (D.Colo.1998).

Brady contends that the District Court should withdraw the reference because she desires that the matter be tried to a jury. She has not filed a proof of claim in the bankruptcy case, and thus she argues that she has not voluntarily submitted to the jurisdiction of the bankruptcy court. Further, she does not consent to a jury trial before the bankruptcy court.[2] She asserts that her position is supported by *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990); and *Getchell v. Chew*, an unpub-

lished opinion issued in this district in Case No. 98–CV–624–K.

CFS contends that Brady may not ultimately be entitled to a jury trial, but even if she is ultimately so entitled, withdrawal of the reference is premature because the bankruptcy court is the more efficient and economical forum in which pre-trial activity may be conducted.

Brady counters with the argument that pre-trial issues should be heard by the District Court so that in the event of erroneous pre-trial rulings by this Court, such issues will not have to be litigated twice, again citing the unpublished *Getchell* case.

### A. Core/Non–Core Jurisdiction

■ Whether the claims are "core" or "non-core" is relevant to the issue of "cause" in connection with withdrawal proceedings for at least two reasons. If the claims are "core" to the bankruptcy process, the bankruptcy court has a greater interest in coordinating the resolution of the claims with the needs of the case—for instance, if the resolution of the claim is one upon which other proceedings depend, the bankruptcy court is more attuned to the urgency of resolution. The bankruptcy court of necessity is more familiar than the district court with the legal precedents concerning "core" matters and with the interplay of various Bankruptcy Code sections. Bankruptcy courts have plenary jurisdiction over "core" proceedings, and resolving "core" proceedings is undertaken on a daily basis by bankruptcy courts. Therefore, finding that a proceeding is "core" is a factor that may weigh against withdrawing the reference. *See e.g., Trustees of the UMWA Combined Benefit Fund v. Westmoreland Coal Co. (In re Westmoreland Coal Co.)*, 221 B.R. 512, 515 (D.Colo.1998).

---

**2.** In 1990, the Tenth Circuit Court of Appeals held that neither the Bankruptcy Code nor the Bankruptcy Amendments and Federal Judgeships Act of 1984 conferred statutory authority upon bankruptcy courts to conduct jury trials. *See In re Kaiser Steel, Inc.*, 911 F.2d

380, 392 (10th Cir.1990). In 1994, Congress amended the jurisdictional statutes to provide that bankruptcy judges, like magistrate judges, may conduct jury trials with the consent of the parties. *See 28 U.S.C. § 157(e)*.

"Non-core" proceedings, on the other hand, cannot be finally determined by bankruptcy courts without consent of the parties. Thus, without such consent, determination of such matters by bankruptcy courts is advisory only. Trying a "non-core" proceeding in the district court may promote efficiency by eliminating a de novo review of the proceedings tried in a bankruptcy court by the district court. Finding that a proceeding is "non-core" is a factor that may weigh in favor of withdrawing the reference. *Id.*

Brady contends that this adversary proceeding is "non-core" simply because "[e]very cause of action asserted by CFS, whether called violation of the automatic stay, unauthorized transfer, or whatever else, is conflated into a *contract case.*" Doc. 40, at 3 (emphasis original). CFS contends that at least the claims defined by the Bankruptcy Code are "core." Doc. 31, at 9. Neither party provided authorities for their respective positions.

"Core" proceedings are described in 28 U.S.C. § 157(b)(1) and (b)(2). Section 157(b)(1) states—

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1).

Section 157(b)(2) lists examples of core proceedings, but states that the list is not exclusive. With respect to the scope of "core" proceedings, the First Circuit Court of Appeals observed—

> [T]he legislative history of [Section 157] indicates that Congress intended that "core proceedings" would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. See

130 Cong.Rec. E1108–E1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); id. at H1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness).

*In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) (Breyer, J.). *Accord In re Best Products Co.,* 68 F.3d 26, 31 (2d Cir.1995); *Duck v. Munn (In re Mankin),* 823 F.2d 1296, 1301 (9th Cir. 1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). The "constitutional limits" referenced by the First Circuit were those defined by the United States Supreme Court in the case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), wherein the Supreme Court declared unconstitutional the expansive powers Congress conferred upon bankruptcy judges in the Bankruptcy Act of 1978. In 1984, Congress amended the jurisdictional statutes to their present state. In *Marathon,* the Supreme Court determined that under the 1978 Act, bankruptcy judges were not Article III judges because Congress did not imbue them with life tenure and salary protection. Bankruptcy courts were determined to be Article I courts that did not have the power to enter final orders in connection with claims that were creatures of state or federal common law, such as contract claims, because the Constitution confers full judicial power only upon Article III courts.

*Marathon* involved a suit by the bankruptcy trustee against a third party for *pre-petition* claims for breach of a *pre-petition* contract. When Congress narrowed the scope of the bankruptcy courts' jurisdiction to enter final orders, it intended only to narrow the scope to the extent required by *Marathon.* Courts that interpret Section 157(b) broadly in favor of finding that a proceeding is within bankruptcy court plenary jurisdiction, as Congress intended, tend to compare the circumstances of the proceeding to those in

*Marathon* to determine whether the circumstances are distinguishable.

██ This Court finds, pursuant to 28 U.S.C. § 157(b)(3), that CFS's requests for relief under 11 U.S.C. § 549 and 550 (for recovery of unauthorized post-petition transfers or their value); under 11 U.S.C. § 362 (for civil contempt sanctions for violation of the automatic stay); and under 11 U.S.C. § 502(d) (for disallowance of any claim against the estate) arise under title 11 and are therefore "core" proceedings over which this Court has plenary jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). These claims "arise under" title 11. *See, e.g., Mountain America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444 (10th Cir.1990) (civil contempt proceedings for violation of the automatic stay is a "core" proceeding); *Weeks v. Kramer (In re Weeks Securities, Inc.),* 89 B.R. 697, 705 (Bankr.W.D.Tenn. 1988) (a proceeding is core if the proceeding invokes substantive rights provided by Title 11); *U.S. v. Carroll,* 567 F.2d 955 (10th Cir.1977) (no right to a jury trial for civil contempt).

██ The fact that CFS's remaining claims for relief employ state law rules of decision does not *per se* render the claims "non-core." *See* 28 U.S.C. § 157(b)(3). Because the alleged conduct that forms the basis of CFS's claims occurred *post-petition* and the claims concern Brady's interaction with CFS as debtor in possession and the effect of her alleged post-petition conduct on property of the estate, this Court finds that CFS's remaining claims of fraud, breach of fiduciary duty, conversion, breach of management retention agreement, and breach of warranty are distinguishable from *Marathon*-type claims (i.e., pre-petition breach of a pre-petition contract by a third party who has not filed a claim against the estate). CFS's claims are claims "arising in" this chapter 11 case. Congress vested in bankruptcy courts full judicial power over proceedings "arising in" a case under title 11; bankruptcy courts may issue final orders and judgments in such cases. *See* 28 U.S.C. § 157(b)(1). The allegations paint a sufficiently close nexus between Brady's alleged post-petition conduct and CFS's role as a debtor in possession to otherwise warrant assuming "core" jurisdiction over the claims.

██ Courts generally view proceedings involving claims that arise after the commencement of the bankruptcy case that are asserted by the debtor in possession against a third party (regardless of whether such party has filed a claim against the estate) as "core." *See, e.g., Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168 (1st Cir. 1987) (actions to collect for breaches of post-petition contracts are "core"); *Hirsch v. London Steamship Owners' Mutual Life Ins. Ass'n (In re Seatrain Lines, Inc.),* 198 B.R. 45, 51 (S.D.N.Y.1996) (a pre-petition contract is an asset of the estate; cause of action on the contract that accrues post-petition gives rise to "core" proceedings); *Lipshie v. AM Cable TV Industries, Inc. (In re Geauga Trenching Corp.),* 110 B.R. 638, 645–47 (Bankr. E.D.N.Y.1990) (a claim for relief that accrues post-petition " 'arises in' the title 11 case, ... [as it] was not owned by the debtor at the time the title 11 case was commenced" and is therefore "core," *quoting* 1 COLLIER ON BANKRUPTCY ¶ 3.01[iv] (15th ed.1989); *see also* cases cited on pp. 646–47); *Umbreit v. Stump, Harvey & Cook, Inc. (In re Baltimore Motor Coach Co.),* 103 B.R. 103 (D.Md.1989) (the proper forum against a non-creditor tort-feasor for post-petition tortious injury is in the bankruptcy court and the matter is "core"); *Pester Refining Co. v. Mapco Gas Products, Inc. (Matter of Pester Refining Co.)* 66 B.R. 801 (Bankr.S.D.Iowa 1986), *aff'd,* 85 B.R. 520 (S.D.Iowa 1987), *aff'd in part, rev'd in part on other grounds,* 845 F.2d 1476 (8th Cir.1988). *But see National Enterprises, Inc. v. Koger Partnership, Ltd. (In re National Enterprises, Inc.),* 128 B.R. 956, 961 (E.D.Va.1991) ("recognizing that not all post-petition breach

cases involve substantial prior and direct dealings with the estate, some courts have applied the Supreme Court admonition to conclude that post-petition damages arising from pre-petition contracts do not give rise to core bankruptcy matters if they essentially present state-based claims.... The fortuitous occurrence of an alleged breach of contract post-petition—standing alone—should not render the estate's action to collect damages for that breach a core proceeding.... [S]ome affirmative interaction between the non-debtor contracting party and the estate must exist for the matter to be considered a core action, subject to the full panoply of the bankruptcy court's power.").[3]

Recovery by a debtor in possession for post-petition harm to assets of the estate (*i.e.*, the benefits of the management retention agreements, computers, certificates of deposit) also arguably falls within subsection (O) of 28 U.S.C. § 157(b)(2) as "other proceedings affecting the liquidation of the assets of the estate."

It is undisputed that Brady was fully cognizant of the bankruptcy case and the fact that she was employed by a debtor in possession. All conduct by Brady relevant to CFS's allegations occurred post-petition, and, at least with respect to the draw on the letter of credit, occurred with the advice of counsel, who was in contact with CFS as debtor in possession and its counsel. *See* Trans. dated March 17, 1999, pp.

46–50; 59; 61; 75–77; Trans. dated March 29, 1999, pp. 6; Brady Exhibits 1–3; CFS Exhibits F–N. Further, with respect to drawing on the letter of credit, the very contract upon which Brady relied in drawing on the letter was entered into in contemplation of bankruptcy or other change of control. *See* CFS Exhibit A.

This is not a case in which a party acted in ignorance of the bankruptcy or was not apprised of the bankruptcy court's jurisdiction and oversight over the operation of CFS's business and its assets. An argument that Brady should not be subjected to the bankruptcy court's "core" jurisdiction with respect to the alleged post-petition conduct as to CFS is inconsistent with the constitutional concern that underpins "non-core" jurisdiction—that is, that parties who dealt with a pre-petition entity should not be subjected to a non-Article III court's decisional power when such parties had no forewarning of such jurisdiction at the time they took the action from which the claim arose. *See e.g. Weiner's, Inc. v. T.G. & Y Stores, Co.*, 191 B.R. 30, 32–34 (S.D.N.Y.1996) (persuasive discussion of the nexus between conduct and bankruptcy case sufficient to render claims "core"—the Court found a post-petition *unintentional* tort claim was non-core because of lack of knowledge of the alleged negligent tortfeasor of the bankruptcy proceedings and lack of intent to disrupt administration of the estate).[4]

3. The case of *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764 (10th Cir. BAP 1997), also discusses generally the scope of the categories of proceedings over which the bankruptcy court is empowered to exercise jurisdiction, *i.e.*, proceedings in which a claim "arises under" title 11 or "arises in" a case under title 11, and related proceedings. *Id.* at 770–71. In *Personette*, the Bankruptcy Appellate Panel inquired into whether a bankruptcy court should have abstained from hearing an action commenced in state court by a *reorganized debtor* which was removed to the bankruptcy court by the defendant. The issue in *Personette* was whether the bankruptcy court had even "related to" jurisdiction over these post-confirmation claims, and if so, whether the court erred in refusing to abstain

at the request of the reorganized debtor. The Bankruptcy Appellate Panel did not address post-petition claims brought by a trustee or debtor in possession, such as those alleged in this case, and therefore this Court finds *Personette*'s jurisdictional analysis to be too general to have much practical value in this case.

4. Although many of the cases in which the bankruptcy court assumes "core" jurisdiction over post-petition transactions arise in the context of post-petition contracts with the debtor, this Court sees little distinction between one who knowingly deals with a debtor in a contractual context and one who allegedly commits *intentional* torts against a debtor and the estate.

■ This determination that CFS's claims may be "core" is not conclusive as to whether Brady has a jury trial right, however.[5]

## B. Right to Jury Trial

■ Simply stated, at this point Brady's entitlement to a jury trial is not yet fixed. Whether Brady is entitled to a jury on some or all of the claims asserted by CFS requires a complex analysis that is premature in light of the fact that *no bar date for filing claims has been set* in the CFS bankruptcy case. Brady asserts that under the *Granfinanciera* case, she is entitled to a jury because she has not filed a claim against the bankruptcy estate, and thus has not invoked and submitted herself to this Court's equitable power to allow or disallow claims against the estate. Although Brady has not yet filed a claim against the estate, she may file a claim at any time prior to a claims bar date. Therefore, it is premature to determine whether this adversary proceeding will ultimately be within the equitable jurisdiction of this Court, in which case Brady would not be entitled to a jury trial. *See, e.g., Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (a litigant waives the right to a jury trial by filing a claim against the estate).

## C. Judicial Economy, Convenience, and Uniformity and Efficiency of Bankruptcy Administration

■ Assuming, however, that Brady will be entitled to have a jury perform the fact finding in this proceeding, this Court recommends that reference not be withdrawn until the services of a jury are necessary. Many district courts have held that withdrawal of the reference on the ground that a party is entitled to a jury trial should be *deferred* until the case is "trial ready." *See, e.g., Disbursing Agent of Murray F. Hardesty Estate v. Severson (In re Hardesty),* 190 B.R. 653 (D.Kan. 1995); *Hunnicutt Co. v. TJX Companies, Inc. (In re Ames Department Stores, Inc.),* 190 B.R. 157 (S.D.N.Y.1995); *Hayes v. Royala, Inc.,* 180 B.R. 476 (E.D.Tex.1995); *Berger v. Watrous & Ehlers, PC (In re Kirk E. Douglas, Inc.),* 170 B.R. 169 (D.Colo.1994) ("the bankruptcy court has authority, even when a jury trial has been demanded, to supervise discovery, conduct pretrial conferences, and rule on motions"); *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 763 (S.D.N.Y.1994); *Stein v. Miller,* 158 B.R. 876, 880 (S.D.Fla.1993); *City Fire Equipment Co. v. Ansul. Fire Protection Wormald U.S., Inc.,* 125 B.R. 645, 649 (S.D.Ala.1989).

The particular judge presiding over a jury trial need not have participated in pre-trial proceedings. In fact, in this district, most pre-trial proceedings in federal district court are routinely heard and decided by magistrate judges. And like magistrate judges, in matters over which the bankruptcy court has limited jurisdiction, such as summary judgment requests on *non-core* matters, bankruptcy judges are authorized and directed to submit to the district court proposed findings of fact and conclusions of law to assist the district court in entering a final order. *See* 28 U.S.C. § 157(c).

The District Court in the *Hayes* case stated concisely:

Although the bankruptcy judge cannot preside over Plaintiffs' jury trial [because plaintiffs did not consent], he is empowered to dispose of all issues of

---

5. In this case, the significance of the "core/non-core" distinction is minimal for the purpose of determining the motion to withdraw the reference. Even if the claims were determined to be "non-core," this Court's ultimate recommendation would be the same. Notwithstanding the above analysis and determination, in the event that the reference of this case is not withdrawn and pre-trial proceedings continue in this forum, this Court would not preclude the parties from submitting argument and authorities on the "core/non-core" issue if a dispositive motion were submitted for decision since neither party has yet briefed or argued the issue.

law. Issues of law, by their very nature, are within the exclusive purview of the court. See *McFarland v. Leyh*, 40 F.3d 763, 772–73 (5th Cir.1994) (in bankruptcy proceeding no right to jury trial arises until a jury issue is before the court) and *King v. Fidelity Nat. Bank of Baton Rouge*, 712 F.2d 188, 192–93 (5th Cir.1983) (bankruptcy judge ruling on summary judgment motion does not raise Seventh Amendment issues since motion disposed of a matter of law and review by Article III judges is de novo). Accordingly, this court will not grant a motion to withdraw until it is readily apparent that Plaintiffs' case will require a trial by jury. "If and when the threat to their Seventh Amendment rights becomes concrete, ... [Plaintiffs] may seek appropriate remedies at that time." *Matter of Lieb*, 915 F.2d 180, 185 (5th Cir.1990) (Fifth Circuit refusing to grant mandamus in bankruptcy proceeding because petitioner's Seventh Amendment rights not yet jeopardized).

*Hayes*, 180 B.R. at 477.

Deferral of withdrawal is consistent with the intent that "bankruptcy laws be inexpensive in their administration.... [The United States Supreme Court] has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'" *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966). The District Court in the Southern District of New York ruminated—

A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme. Although

withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*Bianco v. Hoehn (In re Gaston & Snow)*, 173 B.R. 302, 307 (S.D.N.Y.1994), *quoting Kenai Corp. v. National Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y.1992).

Because this proceeding is already well developed in the bankruptcy court, it is judicially economical to maintain the proceeding in the bankruptcy court until a trial is imminent and the circumstances dictate that Brady is entitled to a jury to determine the factual issues that are common to the legal and equitable claims asserted by CFS. Because of this Court's consummate familiarity with the established and undisputed facts, the contracts at issue,[6] and the history relevant to this proceeding, this Court is well-equipped to swiftly address discovery and other pre-trial issues and move the proceeding towards trial-readiness on an expedited basis.

The fact that Brady believes that some pre-trial rulings of this Court may be appealed does not weigh in favor of withdrawing this proceeding prior to the actual jury trial. Following Brady's argument to its logical conclusion, all matters heard by this Court should be withdrawn by the District Court, because there is *always* the possibility that this Court may err and a party may appeal. Further, matters that are appealed to the district court are not "litigated" in District Court, but reviewed, so such matters would not be "litigated" twice except upon remand. See, e.g., *Trustees of the UMWA Combined Benefit Fund v. Westmoreland Coal Co. (In re*

---

6. Brady is one of about a dozen executive CFS employees who entered into management retention agreements containing a "golden parachute" clause approximately one month before the bankruptcy was filed. The Court expects that other issues relating to the management retention agreements will arise. Consistency in interpreting the agreements is a factor the District Court should consider in determining whether to withdraw the reference at this juncture.

*Westmoreland Coal Co.)*, 221 B.R. 512, 515 (D.Colo.1998) ("Taken to its logical conclusion, the Trustees' argument is that parties to bankruptcy proceedings should be entitled to circumvent the bankruptcy court and proceed directly to appeal where they anticipate an unfavorable result from the bankruptcy court. The untenability of such a position given its effects on the litigation process and on the standards of review on appeal, is apparent on its face.").

Even if CFS's claims were non-core and this Court's jurisdiction was limited to proposing findings of fact and conclusions of law, Brady's judicial economy argument is unconvincing for the same reason as stated by the district court in *Hunnicutt* —

> Although Hunnicut argues that the entitlement to de novo review would make the bankruptcy court determination 'superfluous,' that line of reasoning would prevent any non-core matter from ever being referred to the bankruptcy court. Without more, this argument carries little, if any, weight in favor of withdrawal.

*Hunnicutt*, 190 B.R. at 163.

Even if the proceeding is withdrawn at this time, there is no guaranty that Brady or CFS will not appeal rulings of the District Court to the Tenth Circuit, which would also necessitate review and possible remand. This Court recommends that Brady's judicial economy argument be rejected as speculative.

There is the possibility that a jury will never be necessary in this case. The parties may settle. Claims may be resolved as a matter of law on summary judgment. CFS may decide not to pursue some or all of the claims. The complexion of the bankruptcy may change so drastically that CFS decides that it is not feasible to pursue the claims. Issues of law that are uncertain in this case may be resolved in other related proceedings and have an effect upon the merits of this case. If the proceeding does not ultimately go to trial, Brady's alleged "cause" for withdrawal of the reference vanishes. Consideration of a request for withdrawal of the reference is thus premature.

### D. *Forum Shopping*

Finally, Brady's motion appears to be motivated by forum shopping. CFS properly filed its action in the bankruptcy court because all significant events underlying the complaint occurred in the context of CFS's reorganization efforts. It should come as no surprise to Brady that her post-petition encounters with a bankrupt debtor and a bankruptcy estate fall within the bankruptcy court's jurisdiction. If a jury is ultimately required to determine issues of fact, Brady could consent to a jury trial in the bankruptcy court. *See* 28 U.S.C. § 157(e). Brady's election to reject a jury trial in this Court indicates that it is not the desire for a jury trial that motivates her to remove this proceeding to the District Court, but her desire to choose a forum other than the bankruptcy court.

### Conclusion

This Court recommends, therefore, that the reference not be withdrawn at this time and that Brady be permitted to renew her request after discovery is complete and dispositive motions have been determined, to the extent that matters remain that are triable to a jury.