In re HEAVEN SENT, LTD., a/k/a Heaven Sent Couriers, Debtor.

HEAVEN SENT, LTD., Plaintiff,

v.

CENTENNIAL INSURANCE COMPANY, Defendant.

Bankruptcy No. 83–02389G.
Adv. No. 84–1546G.

United States Bankruptcy Court, E.D. Pennsylvania.

June 28, 1985.

Leonard P. Goldberger, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for debtor/plaintiff, Heaven Sent, Ltd., a/k/a Heaven Sent Couriers.

John F. Naulty, Naulty, Scaricamazza & McDevitt, Philadelphia, Pa., for defendant, Centennial Insurance Company.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The portal question raised in the case at bench is whether a chapter 11 debtor has asserted a cause of action by alleging that its insurer attempted to cancel a postpetition insurance policy when the insurer knew that the insurance was necessary for the debtor's successful reorganization. For the reasons stated herein, we conclude that the debtor has not asserted a colorable basis for relief and thus we cannot award the debtor its requested compensatory and punitive damages and attorneys' fees.

The facts of this case are as follows:[1] Heaven Sent, Ltd. ("the debtor") filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). Thereafter, Centennial Insurance Company ("Centennial"), through its agent, James A. Grundy Agency, ("the Agent") issued a cargo insurance policy to the debtor on which it prepaid the annual premium. At the time of issuance, the Agent was aware of the chapter 11 proceeding but Centennial was not.

The policy contains, *inter alia,* a clause which provides that either party can cancel upon notice.[2] As a cargo carrier, licensed by the Interstate Commerce Commission, the debtor is required to maintain insurance,[3] and Centennial's coverage fulfilled this mandate.

A number of months after issuance of the policy Centennial notified the debtor

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. The policy reads:

Cancellation: This policy may be cancelled by the insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the insured at the address shown in this policy or last known address written notice stating when not less than five (5) days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or by the Company shall be equivalent to mailing.

If the premium under this policy is charged on a flat basis and the insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the insured.

3. The Interstate Commerce Act, 49 U.S.C. § 10927, Interstate Commerce Commission regulations 49 C.F.R. §§ 1043.1, 1042.2.

that it would be cancelled prior to the end of the insured period. Thereupon, the debtor filed the instant complaint and a motion for a temporary restraining order. Centennial then consented to the entry of an order barring the cancellation of the policy until its expiration date. Although the adjudication of the issuance of any injunction has been rendered moot, the debtor advanced the case to trial to establish its entitlement to compensatory and punitive damages and attorneys' fees.

■ Before discussing the merits of the action before us, we first set forth the basis of our jurisdiction to hear the matter under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act"). That statute amended 28 U.S.C. § 157 which provides, *inter alia*, that the bankruptcy judges may enter final orders on all core proceedings, such as "(A) matters concerning the administration of the estate...." § 157(b)(2)(A). In the controversy before us the debtor filed the instant action to protect the insurance coverage which, it argues, is necessary for the successful reorganization of its business. We hold that the question of preservation of insurance in a chapter 11 proceeding is directly related to the administration of the estate under § 157(b)(2)(A), thus giving us jurisdiction to enter a final order on the action before us.

■ At the outset of our discussion we reiterate that the question of the issuance of an injunction against the cancellation of the insurance policy has been rendered moot. Nonetheless, our discussion begins with a recitation of the general principle of bankruptcy law that the Code does not enlarge a party's rights created under state or federal law except to the extent that such expansion is expressly or by necessary implication afforded by the Code. More particularly, the Code does not augment the rights of a debtor under a contract nor prevent termination of a contract by its own terms. Consequently, an insurer cannot be directed to renew a policy which is about to expire by its own terms. *In Re Paul E. Crabb and Joan E. Crabb,*

*d/b/a "The Gallery",* 48 B.R. 165 (Bankr. D.Mass.1985); *Heaven Sent, Ltd. v. Commercial Union Insurance Company* (In Re Heaven Sent Ltd.) 37 B.R. 597 (Bankr. E.D.Pa.1984).

■ The general rule in Pennsylvania is that in the absence of a countervailing statute, a right of cancellation in an insurance policy is effective according to the terms of that policy. *Hanna v. Reliance Insurance Co.,* 402 Pa. 205, 166 A.2d 877 (1961); *Turney v. Allstate Insurance Co.,* 167 Pa.Super. 175, 74 A.2d 730 (1950); *Gosch v. Firemen's Insurance Co.,* 33 Pa.Super. 496 (1907). The policy in the instant case gave either party the unqualified right to cancel upon notice. No pertinent authority has been advanced under Pennsylvania law which would alter the general rule and support the debtor's proposition that Centennial's conduct gave rise to a cause of action. Instead the debtor directs our attention to five inapposite cases, each of which stand for the principle that under Pennsylvania law when an insurer is bound by an insurance contract to represent an insured in the negotiation, settlement and defense of claims, that insurer has assumed a fiduciary duty to act in the utmost good faith. *Shapiro v. Allstate Insurance Co.,* 44 F.R.D. 429 (E.D.Pa.1968) (good faith lacking where the insured conducted an inadequate investigation of claim, resulting in an unrealistic evaluation of the likelihood of successfully defending the action); *Gray v. Nationwide Mutual Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966) (good faith absent where the insured refused to settle within policy limits); *White v. Erie Indemnity Company,* 29 Pa.D. & C.3d 453 (1983) (same); *Gedeon v. State Farm Mutual Insurance Co.* 410 Pa. 55, 188 A.2d 320 (1963) (lack of good faith attributable to the insurer's refusal to defend wrongful death action); *Cowden v. Aetna Casualty & Surety Co.,* 389 Pa. 459, 134 A.2d 223 (1957) (good faith lacking where the insurer failed to settle for an offer which exceeded the insurance coverage). In each of these cases the dispositive factor is the finding of bad faith in the insurer's investigation, ne-

gotiation, defense, or settlement of a claim under a policy. As we said, these cases are inapposite to the issue before us. We thus conclude that the debtor has presented no cause of action under Pennsylvania law.

■ It is next necessary for us to determine whether the debtor has a cause of action under the Code. The general rule is that an insurer may cancel a policy which was issued to a debtor after it had filed its chapter 11 petition. *In Re Douglas*, 18 B.R. 813 (Bankr.W.D.Tenn.1982). *Douglas* appears to be strikingly on point. In both the case at bench and *Douglas* the insurance was obtained postpetition; the agent, but not the insurer was aware of the proceeding; both policies contained similar cancellation clauses; the annual premiums were fully paid; and each insurer attempted to cancel the policy when they learned of the debtors' chapter 11 status. The debtor in *Douglas* moved for an injunction under 11 U.S.C. § 105(a)[4] to bar cancellation of the policy on the basis of alleged discrimination under 11 U.S.C. § 525.[5] The

court held that while the insurer's actions were discriminatory, § 525(a) does not prohibit such action by private parties. *Douglas*, 18 B.R. at 815. As the court noted in *Douglas*, "[t]he Bankruptcy Code generally does not grant the debtor in possession or bankruptcy trustee greater rights under a contract than a debtor in possession or a bankruptcy trustee had outside of bankruptcy." The court found nothing in the facts of *Douglas* which enlarged the rights of the debtor under the Code. In sum, the court concluded that the debtor had no cause of action under the Code.[6]

Faced in the case at bench with facts virtually identical to those in *Douglas*, we likewise conclude that the debtor has not stated a cause of action. We will accordingly enter an order denying the request for damages and attorneys' fees.

**4.** § 105. Power of court
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

**5.** § 525. Protection against discriminatory treatment
(a) Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–299), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt, or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not

paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—
(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;
(2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
(3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.
Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2593. Paragraph (b) added by Sec. 309 of Pub.L. 98–353, July 10, 1984, 98 Stat. 333.

**6.** Accord: *Bogey's Barn Ltd. v. Indiana Insurance Company*, (In Re Bogey's Barn, Ltd.) 47 B.R. 555 (Bankr.S.D.Fla.1985); *In Re Heaven Sent, Ltd.* 37 B.R. 597 (Bankr.E.D.Pa.1984); *In Re Advent Corp.*, 24 B.R. 612 (Bankr.App. 1st Cir.1982); *White Motor Corp. v. Nashville White Trucks, Inc.*, (In Re. Nashville White Trucks, Inc.) 5 B.R. 112 (Bankr.M.D.Tenn.1980).