In re **NORTHWESTERN INSTITUTE OF PSYCHIATRY, INC., Progressions Group, Inc., Malvern Institute for Psychiatric and Alcoholic Studies, Debtors.**

**Northwestern Institute of Psychiatry, Inc., Plaintiff,**

v.

**The Travelers Indemnity Company, Defendant.**

**Bankruptcy Nos. 00–33364DWS, 00–33365DWS, 00–33369DWS. Adversary No. 01–0656.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 29, 2001.

See also 2001 WL 1117663, 2001 WL 1188220.

Albert A. Ciardi, III, Philadelphia, PA, for Debtor/Plaintiff.

Louis J. Brown, White & Williams, LLP, Philadelphia, PA, for Defendant.

Ronald S. Gellert, Klerh, Harrison, Harvey, Branzburg & Ellers, LLP, Philadelphia, PA, for the Committee.

William R. Kane, Kane, Willner & Hollman, P.C., Philadelphia, PA, for State Street Bank & Connecticut General Life Ins. Co.

Dave P. Adams, Office of the U.S. Trustee, Philadelphia, PA, United States Trustee.

## MEMORANDUM OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is Travelers Indemnity Company's ("Travelers") Motion Pursuant to Fed.R.Bankr.P. 9024 and Fed. R.Civ.P. 60(b)(6) for Reconsideration of the Court's Scheduling Order of August 2, 2001 ("Reconsideration Motion") and to Stay the Adversary Proceedings Against the Travelers Indemnity Company (the "Stay Motion") (together, the "Motion"). An expedited hearing was held on Travelers' request on August 15, 2001 after which a briefing schedule was agreed upon. All briefs now having been received, this matter is ripe for decision.

## BACKGROUND

■ The Debtor owns and operates a psychiatric hospital in Fort Washington, Pennsylvania. It and two affiliated companies filed for reorganization under Chapter 11 on October 27, 2000.[1] The Debtor has

---

1. No evidence was taken in connection with this contested matter. I shall take judicial notice of the docket entries in this case. Fed. R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi,* 1993 WL 69146, at *2 (N.D.Ill.1993); *In re*

been granted several extensions of time to file its plan of reorganization based on its need to secure financing which was ultimately obtained. On August 21, 2001, I entered an order granting a further unopposed extension of the exclusive period for plan filing based on the Debtor's motion which stated as cause, *inter alia,* that a flood of its premises had impaired Debtor's efforts to operate profitably and meet its reorganization agreements with creditors. Doc. No. 336. This event is the subject of the instant adversary proceeding.

The adversary proceeding against Travelers seeks a declaratory judgment that the insurance policy issued post-petition to the debtor-in-possession covers the aforementioned flood damage (the "Coverage Issue"). Travelers refused coverage based on its conclusion that the property was located in a flood zone for which coverage was excluded under the policy. According to the Debtor, it is unable to utilize 32 of its 146 beds as a result of the casualty. Because of the economic impact of the reduced census and the lack of funds to repair the damage, the Debtor filed a preliminary injunction and a request for expedited trial on the Coverage Issue, contending that it was in precarious financial condition and its reorganization was in jeopardy. Also framed by the Complaint are counts for breach of con-

tract and bad faith which the Debtor agrees may be heard in the ordinary course after appropriate discovery and pretrial process. These latter counts greatly expand the scope of discovery and may require the joinder of third parties.

On August 2, 2001, after a conference call with counsel for the parties, I entered a Scheduling Order requiring responses to the Motion and Count I of the Complaint by August 14, 2001 and set a discovery and motions deadline of August 29, 2001. Trial of the Motion and Count I of the Complaint "insofar as they seek a declaratory judgment that Travelers is required to cover Plaintiff's flood loss under the policy issued to Plaintiff, Exhibit A to the Complaint, and an injunction compelling payment of the claim" was scheduled for September 5, 2001. My Order expressly provides that other than as to Count I, the Complaint may be answered in the ordinary course pursuant to the Summons issued. Pursuant to the Scheduling Order, Travelers filed a Motion to Dismiss the Complaint ("Dismissal Motion") on August 14, 2001. Contemporaneously therewith, Travelers filed the Reconsideration Motion contending, *inter alia,* that the calendar established in the Scheduling Order does not afford it adequate time to do needed discovery prior to trial.[2]

*Paolino,* 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995). Moreover, while a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, *In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute . . . [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules)). Any facts relied upon

here are for the sole purpose of deciding these wholly procedural motions.

2. Travelers also contends that the Order was improper as Debtor had not effected personal service on Travelers when it was entered on August 3, 2001. As I noted in my Order, Travelers' attorneys denied authority to accept service of the Complaint which had been sent to their client by facsimile and overnight mail on July 27, 2001. Another copy of the Complaint with the Summons subsequently issued by the Bankruptcy Court was also sent to Travelers by facsimile and overnight mail on August 2, 2001. Thus, it appears that

Moreover, it is Travelers' position that the district court, not this court, is the proper forum for the Coverage Issue dispute that animates this adversary proceeding. To that end, it has filed a motion to withdraw the reference of this adversary case ("Withdrawal Motion")[3] with the district court and the Stay Motion with this court to stay all proceedings until the district court decides the Withdrawal Motion. I turn to the Stay Motion first as its outcome obviously impacts the scheduling at issue in the Reconsideration Motion.

### Stay Motion

 Travelers seeks withdrawal of the reference on the grounds that the adversary proceeding is a non-core matter as to which the bankruptcy court cannot enter a final judgment. As such, it argues that it is in the interest of judicial economy for the district court which is not so restricted to hear the case.[4] Additionally Travelers contends that it has the right to a jury trial which cannot be held in the bankruptcy court without its consent which it will not provide.

 Federal Rule of Bankruptcy Procedure 5011 provides that the filing of a motion for withdrawal of the reference

"shall not stay any proceeding before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion."[5] The moving party has the burden of proof in demonstrating to this Court that a stay would be proper. *Mitchell Miller, Trustee v. Vigilant Insurance Co. (In re Eagle Enterprises, Inc.)*, 259 B.R. 83, 86 (Bankr. E.D.Pa.2001); *TJN, Inc. v. Superior Container Corp. (In re TJN, Inc.)*, 207 B.R. 499, 501 (Bankr.D.S.C.1996). In deciding a stay motion under Rule 5011, I will follow the lead of sister courts that have applied the same standards that are utilized to decide a motion for a stay pending judicial review even though that is not the precise nature of the request being made. Thus, the movant must demonstrate the likelihood of prevailing on the merits; that it will suffer irreparable harm if the stay is denied; that the other party will not be substantially harmed by the stay; and that the public interest will be served by granting the stay. *Eagle Enterprises, supra; Priest v. Interco, Inc. (In re Interco, Inc.)*, 135 B.R. 359, 361 (Bankr.E.D.Mo.1991). Applying those standards, I find that a stay is not warranted for the reasons that follow.

Travelers had been served when the Order was entered. In any event as the Scheduling Order is being reconsidered herein and a new Order entered, the alleged service problem is moot. Since Travelers' counsel did not press this issue at the hearing, I assume he agrees.

3. Attached to the Motion as Exhibit "D" is a copy of the Withdrawal Motion which I was advised at the hearing held on August 15, 2001 had been filed.

4. Notably, the bankruptcy court can enter final orders in non-core, related matters where the parties otherwise agree. 28 U.S.C. § 157(c)(2); *United States Lines, Inc. v. American Steamship (In re United States Lines, Inc.)*, 197 F.3d 631, 636 (2d Cir.1999). Travelers does not do so.

5. The Rule also proscribes that a motion for a stay shall be presented first to the bankruptcy judge. I note that the Withdrawal Motion includes a request for a stay from the district judge pursuant to Fed.R.Bankr.P. 5011 "if the bankruptcy judge is unavailable to timely address the issues raised by The Travelers and/or such relief is denied by the Bankruptcy Court." As Travelers acknowledges this court's role in the first instance to decide the appropriateness of the stay and as Rule 5011 requires a statement as to why the relief has not been sought or obtained from the bankruptcy court, I will assume that the Withdrawal Motion is not attempting to move on two fronts on this issue. Rather I will set forth my findings and conclusions in detail case to facilitate review by the district court as may be required.

### (1) *Likelihood of Prevailing on the Merits*

#### A.

This factor requires me to determine the likelihood of the district court granting the Withdrawal Motion. The relevant considerations were addressed at the hearing and have been thoroughly briefed by the parties. The first issue I need to address is whether withdrawal of the reference may be limited to a discrete part of this proceeding. This is significant because only the Coverage Issue is being pressed for expedited trial, and it raises narrow questions that may be capable of resolution on the Dismissal Motion filed by Travelers and answered by Debtor and Intervenors, the Official Creditors' Committee and State Street Bank and CG Life. Accordingly, if this court may adjudicate that portion of Count I that seeks a declaratory judgment as to the existence of coverage for the casualty loss and the companion motion that seeks an injunction requiring Travelers to make payment if coverage is confirmed,[6] the other Counts could be withdrawn or remain here as the district court saw fit to determine at some later date when the pleadings were closed.

■ The statutory authority for withdrawal of the reference is contained in 28 U.S.C. § 157(d) which provides:

The district court may withdraw, *in whole or in part,* any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.[7] (Emphasis added).

It would appear from the plain language of this section that a district court may exercise its discretion to withdraw a part of a proceeding and the cases reflect that they have done so. *See, e.g., Central Illinois Savings & Loan Ass'n v. Rittenberg Company, Ltd. (In re IQ Telecommunications, Inc.),* 70 B.R. 742, 746 and n. 4 (N.D.Ill. 1987) (mandatory withdrawal of reference as to one defendant did not require that court exercise its discretion and withdraw entire proceeding). Moreover, it is not uncommon for district courts to defer withdrawal of the reference to allow the bankruptcy court to handle a proceeding until such time as the district court determines that the bankruptcy court may not do so. Many district courts have held that withdrawal of the reference on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready."

---

6. There was some confusion in the mind of Travelers' counsel as to what was within the scope of the scheduled proceedings in this court, especially as relates to the injunctive component of the case. I confirmed, and the Debtor agreed, that it is not my intention on this expedited schedule to determine the amount of insurance coverage. In other words, I do not anticipate a damages trial. The amount of coverage is not at issue and may never be. Rather the sole dispute is whether there is coverage. The thrust of the injunction will be to compel Travelers, if coverage exists, to pay the claim in the amount provided under the policy. While there may be some disagreement as to the appropriate amount, not an uncommon event with insurance claims, presumably it will be addressed by *negotiation or payment with a reservation* of rights.

7. Since consideration of both title 11 and another law of the United States is not implicated by this proceeding, withdrawal of the reference is not mandatory. Thus, I address, as do the parties, the considerations pertaining to discretionary withdrawal of the reference.

*Commercial Financial Services, Inc. v. Brady (In re Brady)*, 239 B.R. 586, 596 (Bankr.N.D.Okla.1999) (*citing* district court cases so concluding). *See* page 20–21 *infra*. Thus, the district court need not address the withdrawal of the entire Complaint at this juncture if some part of it should remain in the bankruptcy court. Because the non-coverage issues may require a different analysis on a motion to withdraw the reference and because those issues are not the subject of this Court's pretrial Order, it appears that withdrawal is premature at best. However, the Coverage Issue which is proceeding in this court is ripe for the district court's withdrawal determination, and it is this part of the proceeding which Travelers seeks to stay. Accordingly, my analysis is limited to the Coverage Issue.

### B.

■■■■ While there are a number of factors to be considered in adjudicating a motion to withdraw the reference, the first and most important criteria is whether the litigation presents a core or non-core matter. Bankruptcy judges may hear and enter final adjudications with respect to core proceedings but shall submit proposed findings of fact and conclusions of law to the district court for entry of a final judgment by that tribunal where a matter is non-core. 28 U.S.C. § 157(b) and (c). Accordingly, if the Coverage Issue is a core matter, Travelers' contention that judicial economy is promoted by referral is flawed since this court can finally adjudicate the matter *sub judice*.

■■■■ Another consequence follows from the core/non-core distinction. If the Coverage Issue is non-core, Travelers is entitled to a jury trial, and bankruptcy courts may not conduct jury trials in non-core matters. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). If the matter is core, Travelers may or may not be entitled to a jury trial, and the bankruptcy court may conduct such a trial with the consent of the parties. As Travelers has not filed an answer to the Complaint, it has not had to take a position on whether it will demand a jury trial. Travelers relies on its right to demand a jury trial and its refusal to consent to this court's conduct of such trial as a basis to remove this matter to the district court. Notably, however, Travelers does so with the acknowledgment that once before the district court, it may not elect to actually demand a jury trial. The Debtor acknowledges that if this matter is non-core or core with a right of jury trial and Travelers demanded a jury trial, withdrawal of the reference would be appropriate. However, the Debtor contends that the Coverage Issue is a core matter with no right of jury trial or alternatively that Travelers has waived its right to one, and therefore presents no basis for withdrawal of the reference.[8] I agree that withdrawal of the reference is not appropriate although not for the precise reasons articulated by the Debtor.[9]

**8.** The Debtor does not concede that the other Counts of the Complaint are non-core matters that cannot be heard by this Court. However, it recognizes that a determination of this issue is not presently necessary. Moreover, to the extent certain of these issues are non-core, Travelers has yet to make a jury demand. Upon resolution of the Motion to Dismiss, it will be compelled to make this determination. Should it opt for a bench trial, this Court may adjudicate the proceeding as part of its relat-

ed to jurisdiction. Alternatively, this Court can be directed to conduct all pretrial proceedings with the reference to be withdrawn for the ultimate trial if necessary.

**9.** Section 157(b)(3) contemplates that the bankruptcy judge shall determine whether a proceeding is core or merely related to the bankruptcy case, *i.e.* non-core. Where a motion for withdrawal of the reference is made, it is not clear which court should render this

## C.

The non-exclusive definition of core proceedings is set forth in § 157(b)(2)(A) through (O). Because of the generality of subsections (A) "matters concerning administration of the estate" and (O) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship...," courts have frequently been asked to set the parameters of core jurisdiction consistent with the constitutional mandate of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As the parties recognize, the Third Circuit Court of Appeals has addressed this issue in a number of contexts. Travelers cites to *CoreStates Bank v. Huls*, 176 F.3d 187, 196 (3d Cir.1999), for the court's statement that "a proceeding is core under section 157 if it invokes a substantive right provid-ed by title 11, or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Travelers Indemnity Company's Supplemental Memorandum in Support of Motion ("Travelers' Memo") at 3.[10] The *Huls* test of a core proceeding supplements the specific list of core proceedings set forth in § 157(b)(2).[11] Since the Debtor contends that the Coverage Dispute is a core proceeding listed in the statute under subsection (b)(2)(A), my analysis is not defined by *Huls* and the other cases employing this test in other circumstances.

■ I begin by noting a factual predicate that Travelers ignores in its submission to the district court and argues has no relevance to my determination. The insurance policy that is the subject of this litigation was issued to the Debtor on June 20, 2001 for the period April 1, 2001 to April 1, 2002. Complaint, Exhibit A.[12] As

---

10. Travelers understands that test to dictate withdrawal of the reference where a proceeding essentially raises questions of state law. That conclusion is misguided as is made clear by the statutory admonition that "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). *See Ben Coo-*

determination. In practice, however, it is not uncommon for the district judge to remand to the bankruptcy judge for such a determination. *See C–TC 9th Avenue Partnership v. Norton (In re C–TC 9th Avenue Partnership)*, 177 B.R. 760, 765 (N.D.N.Y.1995) (*citing* cases requiring the bankruptcy judge to make the determination). *See also Commercial Financial Services.*, 239 B.R. at 590 (bankruptcy judge makes report and recommendation on withdrawal of reference pursuant to local rule of court so requiring). Because the core/non-core finding is dispositive of my conclusion as to the likelihood of Travelers prevailing on its Withdrawal Motion, I will address this question first and in so doing hopefully also obviate the need for a remand by the district court should it wish this court to render an opinion on that issue.

*per, Inc. v. Insurance Company of the State of Pennsylvania (In re Ben Cooper Inc.)*, 896 F.2d 1394, 1399 (2d Cir.), *certiorari granted* and *judgment vacated*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *opinion reinstated*, 924 F.2d 36 (2d Cir.1991) (§ 157(b)(3) demonstrates Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims where they are at the heart of the administration of the estate). *See also Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir.1999). Thus, Travelers' insistence that the state law origins of the Coverage Issue requires withdrawal of the reference should be rejected without more.

11. What the Court actually said was "[a]long with those listed in the statute, a proceeding is core if it invokes a substantive right provided by title 11, or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." 176 F.2d at 196.

12. At the hearing, Travelers' counsel neither confirmed nor denied the post-petition status of the contract, claiming to be unaware of the date the policy was issued. Notably the policy is annexed to its Motion but the declara-

such, it is a post-petition contract of the debtor-in-possession. While all policies that provide insurance to a debtor are held to be property of the estate under § 541, there is a divergence of opinion as to whether disputes relating to insurance contracts that were entered into after the commencement of a bankruptcy case are core proceedings as defined by § 157(b)(2).

In *Ben Cooper, Inc., supra*[13] the circuit court stated that "a post-petition contract that has as its subject matter an estate asset must be analyzed differently than one arising prepetition." *Id.* at 1399. The Court then explained why.[14]

The First Circuit, *Arnold Print Works, supra,* [815 F.2d 165 (1st Cir.1987) ] recently held that postpetition contract claims are core. *Arnold Print Works* observed that, historically, trustees and debtors-in-possession (Cooper's status) have been viewed for various purposes as officers of the bankruptcy court. 815 F.2d at 169–70. Post-petition contracts with the debtor-in-possession, therefore, are integral to the estate administration from the date they are entered into. *Id.; In re Baker & Getty Financial Servs. Inc.,* 88 B.R. 137, 139–40 (Bankr. N.D.Ohio 1988); *In re Franklin Com-*

*puter Corp.,* 60 B.R. 795, 800–01 (Bankr. E.D.Pa.1986). We find the reasoning of *Arnold Print Works* especially persuasive in light of the facts of the instant appeal: the Georgia facility was an asset of the estate; Cooper's reorganization plan promised adequate insurance for the estate assets; the bankruptcy court's confirmation of the plan was premised on adequate insurance; and appellees were aware that they were dealing with a debtor-in-possession and that the subject matter of the policy was an asset of the estate. *Cf. In re Mike Burns Inn. Inc.,* 70 B.R. 863 (Bankr. D.Mass.1987) (post-petition claim on insurance policy acquired post-petition is core); *In re Heaven Sent, Ltd.,* 50 B.R. 636 (Bankr.E.D.Pa.1985) (action to maintain insurance is core). It is difficult to conceive of a claim, at least one arising outside of the substantive law of bankruptcy, that would be more intrinsic to estate administration.

We hold, therefore, that the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition. The adjudication of such claims is an essential part

tions page that provides the basic identifiers, including name and address of insured, date of issue, policy period, and premium amount is absent.

**13.** The *Ben Cooper* decision is well known for its holding that bankruptcy judges have constitutional and statutory authority to hold jury trials. While the United States Supreme Court granted certiorari, the issue was not resolved. This aspect of Ben Cooper is not implicated here.

**14.** The Second Circuit reiterated that view in *United States Lines, Inc. v. American Steamship (In re United States Lines, Inc.),* 197 F.3d 631, 636 (2d Cir.1999), and went further. It found claims for declaration of coverage under *prepetition* contracts were core claims be-

cause of their significant impact on the administration of the estate. In that case, the insurance proceeds were almost entirely earmarked to pay personal injury claimants and represented the only potential source of cash available to that group of creditors. Thus, in the Second Circuit, even a claim based upon a prepetition contract can be the subject of a core proceeding where the contract has an impact on other core bankruptcy functions. While other courts have held likewise, the Third Circuit Court of Appeals expressly refused to decide whether a claim for the postpetition breach of a pre-petition contract is a core matter in *Beard v. Braunstein,* 914 F.2d 434, 445 (3d Cir.1990), a case involving claims for both pre- and post-petition rents owed under a pre-petition lease. *See* p. 14 and n. 15 *infra.*

of administering the estate. We read *Marathon* to apply to claims arising pre-petition, and decline to apply that ruling to claims involving contracts entered into post-petition. Similarly, we distinguish those lower court cases cited by appellees that, relying on *Marathon*, hold pre-petition claims to be non-core. [citations omitted.]

*Id.* at 1399–1400.

While the majority of reported lower court decisions appear to accept the pre- and post-petition contract distinction, the Sixth Circuit has clearly rejected the expansive view of core jurisdiction adopted by the First Circuit in *Arnold Print Works* and Second Circuit in *Ben Cooper*. In *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir.1987), the Court considered whether a suit by a third party to recover damages under a post-petition contract for the wrongful issuance of shares of the plaintiff's stock was a core proceeding. Rejecting the applicability of § 157(b)(2)(O) (*i.e.*, proceedings affecting

the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity holder relationship) as overly broad, the Court concluded that (1) bankruptcy judges may exercise full judicial power only over those controversies that implicate particular rights and powers of bankruptcy and (2) controversies that do not depend on the bankruptcy laws for their existence (*i.e.*, suits that could be brought in another court absent bankruptcy) are not core proceedings. *Id.* at 96. Under the holding in *Wood*, the Coverage Dispute would not be a core proceeding.[15]

█ The Third Circuit recognized and discussed the divergent views held by her sister circuits in *Beard v. Braunstein, supra*, but found that the case before the Court did not require an adoption of either view since the contract at issue was entered into pre-petition and as such, the action was entirely a non-core matter related to a case under Chapter 11.[16] Notwithstanding the Court's failure to reach the issue *sub judice*, its analysis of the

**15.** Travelers cites to *In Matter of U.S. Brass Corp.*, 110 F.3d 1261 (7th Cir.1997), as another circuit court rejecting the Debtor's view of core jurisdiction. There the Court found mandatory abstention required because, *inter alia*, the proceedings to determine the scope of insurance policies were non-core proceedings. In so concluding, the court stated that core proceedings are actions that rely on the "Code as the source of the claimant's right or remedy, rather than the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *Id.* at 1268. It found the fact that the claim "is an important right to the bankrupt" to be irrelevant. *Id.* at 1269. However, I could not discern from the opinion whether the policies were issued post-petition to the debtor-in-possession and whether a Chapter 11 reorganization was in process.

**16.** The Court stated:

We are not presented with, and thus do not decide whether a claim for the breach of a

post-petition contract, or a claim only for the post-petition breach of a contract entered into pre-petition, are core matters. 914 F.2d at 445. In *Leonard v. Wessel (In re Jackson)*, 90 B.R. 126, 130 (Bankr.E.D.Pa. 1988), a case preceding *Beard*, the bankruptcy judge examined other Third Circuit authority and concluded that the Circuit would follow *Arnold Print Works*. Curiously neither party discussed *Beard* in its brief, rather referring to Third Circuit cases that have no application here. *Huls, supra*, involved the question of whether claim preclusion applies to a bankruptcy judge's decision in a non-core matter (yes) and *Torkelsen v. Maggio (In re Guild And Gallery Plus, Inc.)*, 72 F.3d 1171 (3d Cir. 1996), involved a suit against the trustee relating to non-estate property. As such, the Court concluded that § 157(b)(2)(A) could not by definition apply since it speaks to matters concerning administration of the *estate*. Indeed not only was the litigation not a core matter, because it was not related to the title 11 case, there was no subject matter jurisdiction.

other circuit decisions convinces me that it is not merely the fact that a contract is entered post-petition but also the fact that it is integral to the reorganization case that gives it its core character. In *Arnold,* the *Beard* Court points out, the contract was a sale of assets of the estate and thus itself was an integral part of the bankruptcy. In *Ben Cooper,* the insurance contract was entered into to comply with the plan of reorganization which required coverage to protect the debtor's assets, and the insurance company was aware of the debtor's Chapter 11 status when it wrote the policy. 914 F.2d at 445. In the instant case, the recovery under the insurance policy is necessary to restore the Debtor's hospital to full capacity to facilitate raising reorganization financing and to enable it to perform its presented court-approved stipulations with its labor union and two secured creditors as well as its contemplated obligations under a plan of reorganization yet to be filed. Thus, this dispute is integral to the reorganization case.[17] *Compare Bernheim v. Chubb Insurance Co. of Canada,* 160 B.R. 42 (D.N.J.1993) (action to recover on insurance policy not an integral part of administering the estate under § 157(b)(2)(A) where plan of reorganization confirmed four years before the policy was issued and six years prior to the time the claim arose).

In *Valley Forge Plaza Associates v. Fireman's Fund Insurance Companies,* *Inc.,* 107 B.R. 514 (E.D.Pa.1989), our district court was faced with a scenario comparable to the one presented here. The Court was asked to withdraw the reference of an adversary proceeding filed by the Chapter 11 debtor against its insurers for a declaration that its general liability and liquor liability policy remained in effect and for injunctive relief against cancellation of the policy. The basic question was whether the debtor was an intended insured under the policy, *i.e.* a coverage dispute (albeit without the complication of a casualty having already occurred). The Court found the action to be core, stating:

> I find the court's reasoning in *Arnold Print Works* persuasive and conclude that it applies not only to a claim for an account receivable based on the post-petition breach of a contract but to other post-petition breach of contract claims as well, such as the declaratory judgment, injunction and damages claims in the case at hand. Therefore, I conclude that the Supreme Court did not intend to include these post-petition breach of contract claims in the category of "traditional" contract actions which could be adjudicated only in Article III courts. In short, there appears to be no constitutional impediment that would prevent a bankruptcy court from deciding a post-petition cause of action based on a state law contract claim. What remains to be determined is whether Congress intend-

---

17. Debtor has represented that its loss of revenue resulting from the beds that cannot be utilized has compelled it to negotiate temporary forbearance agreements with creditors who are being paid under court-approved stipulations. As the judicial officer charged with administering the Debtor's reorganization case, I approved those stipulations which were the basis of the Debtor's ability to operate post-petition with creditor support and proceed to negotiations with the Creditors' Committee on a plan of reorganization. Those negotiations are on hold pending the results of this Coverage Dispute. Unlike the cases cited by Travelers, it is not the mere size of the claim that gives it its core status but rather that the administration and reorganization of the estate is suspended by the uncertainty of the Coverage Issue. The fact that a plan of reorganization has not been filed in this case to date is not dispositive of the significance of the Coverage Issue to the reorganization. *See Bass v. Millican (In re Telemarketing Communications),* 95 B.R. 794, 795 (Bankr.D.Colo.1989).

ed that such post-petition causes of action be decided by bankruptcy courts. A number of courts have held that actions based on post-petition causes of actions are within § 157(b)(2)(A) ("matters concerning the administration of the estate") and, therefore, can be heard and determined by a bankruptcy judge. *See, Arnold Print Works*, 815 F.2d at 168; *In re O'Sullivan's Fuel Oil Co., Inc.*, 88 B.R. 17, 20 (D.Conn.1988); *J.B. Van Sciver Co. v. William Cooper Associates, Inc.*, 73 B.R. 838, 844 (Bankr. E.D.Pa.1987); *In re Epi–Scan, Inc.*, 71 B.R. 975, 979 (Bankr.D.N.J.1987). *See also*, 1 L. King, Collier on Bankruptcy ¶ 3.01[2][b][iv] (15th ed.1989) (action brought on a post-petition account receivable is a core matter). It is arguable that in some of these cases the cause of action may have been more intimately related to the administration of the estate than in the case at hand. In *Arnold Print Works* and *Van Sciver* actions for breach of post-petition sales contracts arose from the debtor's efforts to liquidate property. However, in *In re Heaven Sent, Ltd.*, 50 B.R. 636 (Bankr. E.D.Pa.1985), plaintiff had argued that insurance coverage was necessary for the successful reorganization of his business and the court held that a cause of action based on post-petition cancellation of an insurance contract was a core proceeding. The *Heaven Sent* court found that the preservation of insurance coverage was directly related to the administration of the estate in a Chapter 11 proceeding under § 157(b)(2)(A).

I am persuaded that a cause of action based on a post-petition breach of contract should not be deemed a "traditional" contract action which the Supreme Court has reserved exclusively for Article III courts and that preservation of

an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A). I, therefore, find that plaintiff's complaint is a core proceeding.

*Id.* at 517–18. *See Kent v. CIGNA U.S. Adjustment Corp. (In re Kent)*, 1997 WL 20507, at *4 (Bankr.E.D.Pa.1997) (relying, *inter alia*, on *Arnold Print Works*, and concluding that asserted cause of action which arose post-petition under an insurance contract formed post-petition was core under § 157(b)(2)(A) and (O)); *The Celotex Corp. v. AIU Insurance Co. (In re Celotex Corp.)*, 152 B.R. 667, 675 (Bankr. M.D.Fla.1993) (finding proceeding for determination of rights under insurance contracts to be core and stating that "the juxtaposition of Debtor's reorganization, a fortiori, which contemplates the use of insurance proceeds for distribution to asbestos-related damage claimants, the core determination of 28 U.S.C. § 157(b)(2)(L) and (O), and *Marathon's* emphasis on the adjustment of debtor-creditor relations places this adversary proceeding squarely within the Public Rights Doctrine rather than a mere resolution of private state rights"); *Allied Stores Corp. v. Federal Insurance Co. (In re Federated Dept. Stores, Inc.)*, 144 B.R. 993, 996 (Bankr. S.D.Ohio 1992) (disagreeing that *Arnold Print Works* construed § 157(b)(2) too broadly and *Marathon* too narrowly and finding adversary proceeding to resolve insurance coverage dispute under fiduciary liability policy was a core proceeding under § 157(b)(2)(A)); *In re Heaven Sent Ltd.*, 50 B.R. 636, 638 (Bankr.E.D.Pa.1985) (as preservation of insurance overage in a Chapter 11 proceeding is directly related to the administration of the estate under § 157(b)(2)(A), action to enjoin cancellation which required interpretation of policy was a core matter).[18] *See also Agri–Concrete*

18. Not surprisingly there are also other lower court cases emanating from the First and

*Products, Inc. v. Fabcor, Inc. (In re Agri–Concrete Products, Inc.)*, 153 B.R. 673, 677 (Bankr.M.D.Pa.1993) (finding that the "better and more pragmatic approach and the one giving the most meaning to the statutory authority for core jurisdiction found at 28 U.S.C. § 157" was to follow *Ben Cooper* and the cases cited therein "holding that actions for breach of contracts entered into post-petition are core proceedings.")

In addition to the *United States Brass* case, Travelers cites to *Pozzi v. Merchants and Business Men's Mutual Insurance Co.*, 1992 WL 122904 (E.D.Pa.1992), decided by our district court and holding that an adversary proceeding seeking declaration of rights under a policy of insurance raises claims which arise entirely under state law and constitutes a non-core proceeding. The short opinion in *Merchants* does not reveal whether the policy in dispute was issued post-petition or whether the case involved a Chapter 11 reorganization as here. Indeed the Court expressly relies on *Sullivan v. Maryland Casualty Co. (In re Ramex Int'l)*, 91 B.R. 313, 315

(E.D.Pa.1988), which it notes parenthetically held that a trustee's cause of action for declaratory judgment under a policy of insurance *issued pre-petition* to the debtor is not a core proceeding. Where the insurance coverage issue is not issued to the debtor-in-possession and/or not integral to a reorganization, the proceeding may very well be non-core.[19]

Having reviewed the relevant extant case law on this subject, I conclude on these facts that the Coverage Issue is a core proceeding under § 157(b)(2)(A) since the policy was issued to the debtor-in-possession post-petition and the recovery under that policy is integral to the Debtor's ability to reorganize under Chapter 11. However, my inquiry does not end at this point since it is axiomatic that a right to a jury trial is granted in connection with certain core proceedings. Travelers contends that it has such a right here and as such, withdrawal is mandated as this Court cannot hold a jury trial without the parties' consent which will not be forthcoming.[20] The Debtor disputes Travelers' right to a jury trial and notes its failure to demand

Second Circuits holding insurance coverage disputes to be core proceedings. Since they merely follow or presage precedent in those circuits, they will not be cited. I also acknowledge the many cases cited by Debtor wherein courts have held that a post-petition contract is non-core. Some of these cases are not useful here, *i.e.*, the court is relying on other prongs of § 157(b)(2), the cases arise under other chapters of title 11, *etc.* In any event, because of the many cases that have addressed the core/non-core distinction in the context of withdrawal of the reference or abstention where it is also dispositive, I have confined my discussion primarily to the lower court cases that involve an insurance coverage dispute.

19. As Travelers takes the position that the post-petition nature of the policy is not relevant, the cases that it cites in its brief for a non-core determination are cases in which the contract at issue is pre-petition or, as is

the case with *United States Brass* and *Merchants*, undeterminable on the facts recited. As such, they fail to provide authority that I find useful for this decision.

20. The resolution of this issue could be a factual one. It appears to me that if a party wishes to urge a court to take action, it should not pose hypothetical situations. One could infer that Travelers wants it both ways. It wants to retain its right to proceed non-jury but leverage its right to a jury as an exit visa from this Court that may appear to it to be a more favorable forum to debtors. Clearly, the zeal with which it pursues these procedural issues has more to do with forum selection than judicial expertise. The issues presented by this litigation are state law insurance contract issues. While diversity jurisdiction exists so that absent bankruptcy, this litigation could be brought in federal court, neither the bankruptcy nor the district court judge have any greater ability to deal with this matter.

one. Alternatively, it contends that Travelers has waived its right to a jury trial by entering into contract with the debtor-in-possession. Indeed Travelers does not contend that it will demand a jury trial but merely that it has the right to do so.[21]

As noted above, district courts have refused to withdraw the reference on the grounds that a movant has a *right* to a jury trial. This result has obtained even where the demand was made. According to the Court in *Hayes v. Royala, Inc.,* 180 B.R. 476 (E.D.Tex.1995),

> Although the bankruptcy judge cannot preside over Plaintiffs' jury trial, he is empowered to dispose of all issues of law. Issues of law, by their very nature, are within the exclusive purview of the court. *See, McFarland v. Leyh,* 40 F.3d 763, 772–73 (5th Cir.1994) (in bankruptcy proceeding no right to jury trial arises until a jury issue is before the court) and *King v. Fidelity Nat. Bank of Baton Rouge,* 712 F.2d 188, 192–93 (5th Cir.1983) (bankruptcy judge ruling on summary judgment motion does not raise Seventh Amendment issues since motion disposed of as a matter of law and review by Article III judges is *de novo* ). *Accordingly, this court will not grant a motion to withdraw until it is readily apparent that Plaintiffs' case will require a trial by jury.* "If and when the threat to their Seventh Amendment rights becomes concrete, . . . [Plaintiffs'] may seek appropriate remedies at that time." *Matter of Lieb,*

915 F.2d 180, 185 (5th Cir.1990) (Fifth Circuit refusing to grant mandamus in bankruptcy proceeding because petitioner's Seventh Amendment rights not yet jeopardized.)

*Id.* at 477 (emphasis added). Where, as here, the demand has not been made and may indeed never be made, it is even more appropriate not to withdraw the reference on that basis. Finding that the jury trial issue is at best premature, I need not address the disputed contentions of the litigants regarding Travelers' right to a jury on the Coverage Issue.[22]

### (2) *Other Stay Factors*

The other stay factors are easily resolved. There is absolutely no harm to Travelers if the stay is denied. The consequence is that I will very likely decide the Dismissal Motion (as opposed to the District Court). However, none of the reasons for seeking withdrawal of the reference are implicated by that judicial act. In the interim, the parties will proceed to conduct the discovery that they view necessary to try the Coverage Issue. Because of the consequence to the Debtor of a protracted decision on the Coverage Issue, I am not going to stay discovery while the Dismissal Motion is being adjudicated. While this may be appropriate in a non-bankruptcy context, the inefficiency imposed on Travelers if it prevails on its Dismissal Motion is more than offset by the prejudice to the Debtor of a deferral of a recovery of the proceeds if it is so entitled. As noted below, I am prepared to

---

**21.** Since it has filed the Dismissal Motion in lieu of an answer to the Complaint, the pleadings are still open. Fed.R.Civ.P. 38 (jury demand to be made not later than 10 days after service of the last pleading).

**22.** Given the parties' belief that this dispute is a matter of contract interpretation, it may be amenable to resolution on the Dismissal Motion which I am prepared to turn to next as those briefs have also been filed with this Court on my further scheduling order. If the issue must be tried and if Travelers demands a jury, that will be time enough to address the Debtor's contentions that Travelers has waived its right to jury trial by contracting with a debtor-in-possession. *See* Debtor's Memorandum of Law in Support of Response to Motion at 23 (citing cases).

enlarge the discovery period and set a later trial date. Presumably the Withdrawal Motion will be decided before the trial date, and there is absolutely no reason to stay discovery which would have to occur without regard to the forum in which this matter is heard. A stay involves a balancing of interests. I find that the scale tips decidedly in favor of the Debtor.

### Reconsideration Motion

This motion requests that I revisit the schedule I set in the Scheduling Order. Some background is necessary. After the filing of the Complaint and Motion, I held a telephone conference with counsel to determine an appropriate schedule for this expedited matter. Counsel failed to assist the Court in this matter insisting on the one part that the Debtor would fail if a trial could not be held in a matter of days and on the other part that time consuming discovery was necessary to secure Travelers' rights to due process. The truth was somewhere between these extreme positions. My request that the parties attempt to work out a schedule was to no avail, and the Scheduling Order followed.[23] At the subsequent hearing, I revisited the schedule on Travelers' request. I learned then that the Debtor had been successful in reaching accommodations with certain of its creditors that ameliorated the financial distress resulting from the failure to recover insurance proceeds to repair its facility and put the beds into its census.[24] I also received a more specific outline from Travelers as to the discovery that it believed would be necessary to adequately defend itself at a trial of the Coverage Issue. Based on these representations, I was convinced that it was unnecessary to conduct a trial on September 5 as ordered, and I so advised counsel.

In balancing the need of the Debtor for a quick resolution to this dispute and the need of Travelers to prepare its case for trial, I am mindful of the fact that the Coverage Issue presents a simple dispute. The Debtor secured an insurance policy with the intention that it cover flood loss. The policy that was issued has certain exclusionary language. The Debtor is located in a zone that may or may not be excluded under the language of the policy. Travelers has concluded that the exclusion applies. To do so, it presumably did its homework given the consequences of its decision to Debtor. Both parties appeared to say the issue was one of law, and that the policy was clear. If so, the Dismissal Motion will dispose of the dispute one way or another. If not, and the Debtor appears to now equivocate on the question of whether or not it is located in the excluded flood zone, a trial will be necessary to determine that issue. I have made it clear to the parties that the Coverage Issue is all that I intend to try on an expedited basis. I seek to answer one question: must Travelers cover this loss. I do not intend to liquidate the amount of the claim but merely order Travelers to pay what is due under the policy if the loss is covered. If there is disagreement as to the amount

---

**23.** Travelers' contention that I had an obligation to have an evidentiary hearing before setting a pretrial schedule is rejected.

**24.** To secure a better foundation for my scheduling decision I considered requiring the Debtor's principal to appear and give testimony as to the financial problems the Debtor was experiencing which would be addressed by a speedy (and hopefully favorable) trial. However, it became clear to me that Travelers' counsel, out of concern that the testimony remaining unchallenged, might somehow prejudice his client on the merits of the dispute, would likely turn the scheduling inquiry into a mini-trial, and accordingly I directed the Debtor to provide an affidavit of its financial position for the sole purpose of assisting me with scheduling this matter.

of the claim, I expect that the parties will address that problem at such time with Travelers mindful of its obligations to its insured and the Debtor's vulnerability.[25] Issues concerning how this coverage problem occurred and who is responsible would await another day after the Complaint has been answered in the normal course and appropriate discovery conducted.

With that mind set, I examined Travelers' contention that it needed four months to complete discovery. I considered the depositions that it believed necessary and recognized the difficulty of scheduling third party depositions during the last two weeks of the summer. I reviewed the Debtor's financial information as well as operating reports on file in the Court. I recognized that while the two secured creditors and the union have agreed to forebear from taking action against the Debtor for not paying monthly court-approved obligations, that the Debtor will have to make up these payments and it will never have the operating revenue for the period its beds are out of service. Accordingly, I concluded that it was imperative to get this matter decided as soon as possible consistent with Travelers' reasonable discovery needs. Accordingly, I have reconsidered my Scheduling Order notwithstanding Debtor's position that it is inappropriate for me to do so and issued a new schedule with respect to the Coverage Issue to allow additional time for trial preparation. The Reconsideration Motion is therefore granted to that extent.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

### ORDER

AND NOW, this 29th day of August 2001, upon consideration Travelers Indemnity Company's ("Travelers") Motion Pursuant to Fed.R.Bankr.P. 9024 and Fed. R.Civ.P. 60(b)(6) for Reconsideration of the Court's Scheduling Order of August 2, 2001 ("Reconsideration Motion") and to Stay the Adversary Proceedings Against the Travelers Indemnity Company (the "Stay Motion"),and after notice and hearing and for the reasons set forth in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. The Reconsideration Motion is **GRANTED**. The August 2, 2001 Scheduling Order ("August 2 Order") is hereby amended to reflect the following dates which shall replace and supercede the dates contained therein. All other provisions of the August 2 Order remain unchanged.

Within ten (10) days of this Court's ruling on the pending Travelers' Motion to Dismiss, Travelers shall file an Answer to the Complaint, including a demand for jury trial, if any. Discovery shall proceed notwithstanding the pendency of the Motion to Dismiss, and shall be completed by *October 23, 2001*. Any motions *in limine* shall be filed by *October 23, 2001*. On or before *October 26, 2001 at 12:00 noon,* the parties shall file a **joint pretrial statement** with the Clerk of the Court and serve a copy on chambers. The requirements for the joint pretrial statement are set forth in the August 2 Order which shall remain in full force and effect except as modified by the dates herein. Trial of the Motion and Count I of the Complaint insofar as they seek a declaratory judgment that Travelers is required to cover Plaintiff's flood loss under the policy issued to Plaintiff, Exhibit A to Complaint, and an injunction compelling payment of the claim shall be held on *October 30, 2001 at 9:30 a.m.* in the Robert N.C. Nix, Sr. Federal

---

25. For example, it is not uncommon for payment to be made with a reservation of rights while the parties' attempt to reach a settlement of their differences.

Courthouse, 2nd flr., 900 Market Street, Courtroom # 3, Philadelphia, PA.

Should Travelers prevail on its Motion to Dismiss which is addressed to Count I, this schedule will be moot, and all other issues will be decided in the regular course, including any claims of bad faith or consequential damages.

2. The Stay Motion is **DENIED**.